NATIONS LAW GROUP
Lara Erin Nations
Alaska Bar No. 1506043
2525 Blueberry Road, Suite 207
Anchorage, AK 99503
Telephone: (907) 770-0909
Fax: (907) 770-0902
E-Mail: lara@nationslawak.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHRISTINE JEAN MACARIO PRESTON<br><br>*Plaintiff,*<br><br>WILLIAM P. BARR, Attorney General of the United States; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; CHAD F. WOLF, Acting Secretary of the Department of Homeland Security; KENNETH T. CUCCINELLI, Acting Director of the United States Citizenship and Immigration Services; ANNE ARRIES CORSANO, Director USCIS Seattle District (41); STEVEN B. CORLEY, Field Office Director of the USCIS Anchorage Field Office<br><br>*Defendants* | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. 701 Et seq.** |

COMES NOW, Christine Preston and, via the undersigned counsel, requests relief from the Court as follows:

## I. INTRODUCTION

1. Plaintiff Christine Jean Macario Preston (Ms. Preston) brings this action against the April 29, 2020 denial, by the United States Citizenship and

1

1 Immigration Services (USCIS), of her I-485 application to adjust status to that of a Lawful Permanent Resident (LPR) under section 245(a) of the Immigration and Nationality Act ("INA"). USCIS and others, (collectively the Agency) acting on its behalf, denied Ms. Preston's application by improperly finding she was inadmissible as someone who has falsely claimed to be a citizen of the Unites States in order to obtain any benefit under the law. *See* INA § 212(a)(6)(C)(ii).

2. The Agency based its decision upon three job applications that were auto-populated with information found in Ms. Preston's USAJOBS internet profile. In the profile, Ms. Preston entered that she was <u>not</u> a citizen or national of the United States and then right below, in the box for country of citizenship, she picked the United States. The USAJOBS website has an obvious glitch as it allows an individual to answer <u>no</u> to being a citizen or national of the United States, while also permitting him or her to select the United States as country of citizenship. Ms. Preston presented evidence of this obvious problem to the Agency; the Agency found that the plain reading of the statute made this point irrelevant.

3. Ms. Preston also submitted evidence showing the prospective employer, to whom the job applications were directed, was at all times aware that Ms. Preston is not a citizen or national of the United States but rather is a citizen of the Philippines, and that she was applying for work authorization with the agency. Yet, instead of finding the obvious, namely that the USAJOBS computer programming created an issue that the employer was aware of from the start, the

Agency decided there was some sort of conspiracy in which an Army employee was knowingly receiving false employment applications from Ms. Preston.[1]

4. The totality of the evidence in the record shows that Ms. Preston never falsely represented to be a U.S. Citizen for any purpose or benefit under the INA or Federal or State law because, at worst, it was an error of which her prospective employer knew at all times.

5. Thus, Ms. Preston asks the Court to find that the Agency acted in an arbitrary and capricious manner which violated the Administrative Procedure Act (APA). At the same time, Ms. Preston requests that the Court order the Agency to rescind the April 29, 2020 decision denying her application for adjustment of status, reopen the adjustment proceedings, and adjudicate her application under INA § 245(a).

## II. PARTIES

6. Plaintiff CHRISTINE JEAN MACARIO PRESTON, is a national and citizen of the Philippines born on December 5, 1999. She was last admitted into the United States with a K-1 visa and has not departed the country since that time.

7. Defendant WILLIAM P. BARR, Attorney General of the United States, is sued in his official capacity. As United States Attorney General with ultimate authority over the United States Department of Homeland Security (DHS), Mr.

---

[1] "You included notes on the job application records indicating that the hiring agency knew that you were submitting false information at the time applications were submitted. USCIS finds that this claim does not absolve the fact that you clearly submitted applications on at least 3 occasions claiming United States citizenship."

1 | Barr has the authority to approve, deny, reopen, or perform any other action
2 | permitted by law or ordered by this Court regarding Ms. Preston's application.

8. Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS) is a sub-division with the Department of Homeland Security (DHS), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for actual adjudication of adjustment of status applications and is the agency which adjudicated the application filed by Ms. Preston.

9. Defendant CHAD F. WOLF, Acting Secretary of Homeland Security, is sued in his official capacity. As Acting Secretary of Homeland Security, Mr. Wolf oversees USCIS, a subagency of DHS, and has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this court regarding Ms. Preston's application.

10. Defendant KENNETH T. CUCCINELLI, Acting Director, U.S. Citizenship and Immigration Services, USCIS, is sued in his official capacity. As Acting Director of U.S. Citizenship and Immigration Services (USCIS) Mr. Cuccinelli oversees all USCIS District offices in the United States and has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this court regarding the application filed by Ms. Preston.

11. Defendant ANNE ARRIES CORSANO, Director of the Seattle District of United States Citizenship and Immigration Services, is sued in her official capacity. As Director for District 41 of USCIS, she has jurisdiction over the USCIS field office in Anchorage, Alaska and has the authority to approve, deny, reopen, or

1 perform any other action permitted by law or ordered by this Court regarding Ms. Preston's application.

12. Defendant STEVEN B. CORLEY, Director of the Anchorage Field Office of U.S. Citizenship and Immigration Services, is being sued in his official capacity. In his position as Anchorage Field Office Director, Mr. Corley has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this Court regarding Ms. Preston's application.

### III. JURISDICTION AND VENUE

A. Jurisdiction

13. Jurisdiction is proper under 28 U.S.C. § 1331. This action arises the Immigration and Naturalization Act, 8 U.S.C. §§ 1101 et seq., and its implementing regulations; the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and 28 U.S.C. § 2201(a), because this is a civil action seeking, in addition to other remedies, a declaratory judgment.

14. Jurisdiction is not precluded pursuant to 8 U.S.C. §1252 as this action does not involve review of a discretionary action of the agency but arises from questions under the Constitution and law of the United States.

15. Jurisdiction is not precluded under "sovereign immunity." Pursuant to 5 U.S.C. § 702 of the APA, the United States has explicitly waived sovereign immunity over the plaintiffs' claims since the relief sought is other than money damages.

B. Venue

16. Venue in this judicial district is proper under 28 U.S.C. § 1391 because this is a civil action in which the defendants are, respectively, an agency of the United States and officer(s) of the United States acting in their official capacity, 28 U.S.C. § 1391(e), the events giving rise to this action took place within this District in the geographical limits of the City of Anchorage, Alaska, 28 U.S.C. § 1391(b)(2), and Plaintiff resides in Anchorage, Alaska, 28 U.S.C. § 1391(c)(1).

## IV. STANDING

17. The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. §702. The Agency's improper denial of Ms. Preston's application for adjustment of status (I-485) has adversely affected her ability to obtain legal residence in the United States. Ms. Preston thus falls within the APA's standing provisions.

## V. FINALITY AND EXHAUSTION

A. Finality

18. The March 23, 2020 constitutes final agency action under the APA because it is the denial of relief or its equivalent. U.S.C. §§ 551(13); 701(b)(2); 704.

B. Exhaustion

19. No exhaustion of administrative remedies is required since there is no federal statute or regulation that mandates an appeal to the agency of the decision. *Darby v. Cisneros*, 509 U.S. 137 (1993). Neither the INA nor implementing regulations at 8 C.F.R. § 103.3(a) requires an administrative appeal of the denial. Further, the only avenue for Ms. Preston is to file a motion to reopen or reconsider

with the Agency, and these motions are not requirements of administrative exhaustion. 8 U.S.C. § 1252(d)(1); *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003).

## VI. STATUTE OF LIMITATIONS

20. This case is filed within the general six-year statute of limitations for civil actions brought against the United States under 28 U.S.C. § 2401(a). The Agency decision impugned is from April 29, 2020, well within the statutory period to bring the present action.

## VII. LEGAL BACKGROUND

A. Adjustment of Status

21. Adjustment of Status to lawful permanent resident (LPR) is the procedure by which an individual in the United States is permitted to reside and work lawfully in this country. INA § 245(a); 8 U.S.C. § 1255(a).

22. Adjustment of status takes place by the filing of an application (I-485) with USCIS and, by a preponderance of the evidence, demonstrating that the applicant is admissible as an LPR. INA § 245(a); INA § 291; 8 U.S.C. § 1361; *Matter of E-M-*, 20 I&N Dec. 77 (BIA 1989).

23. Because adjustment of status is regarded as an admission, the inadmissibility charges of the INA are operational and an applicant is impeded from being admitted to lawful permanent residence if one such charge applies. *Matter of Agour*, 26 I&N Dec. 566 (BIA 2015).

24. It is the burden of the applicant to prove that she is admissible, and not affected by a mandatory ground for denial of relief, by a preponderance of the evidence. 8 C.F.R. § 1240.8(d).

B. False Claim to U.S. Citizenship

25. The INA classifies as inadmissible any person who makes a false claim of U.S. citizenship in order to obtain any benefit under federal or state law. INA § 212(a)(6)(C)(ii).

26. There is no waiver for inadmissibility resulting from a false claim to U.S. citizenship such that it is known as "immigration death." INA § 212(a)(6)(C)(ii).

27. To trigger inadmissibility, the claim must fall within the four corners of the statute. It must be made for a purpose or benefit under state or federal law, it must be false, and it must be for U.S. Citizenship. If the alleged claim does not meet one or more of these requirements, it does not support inadmissibility under INA § 212(a)(6)(C)(ii).[2]

28. The BIA has recognized the virtue of applying the principle of timely retraction when an individual "voluntarily and prior to any exposure of the attempted fraud corrected his testimony that he was an alien lawfully residing in the United States." *Matter of M-*, 9 I&N Dec. 118, 119 (BIA 1960); *see also Matter of R-R-*, 3 I&N Dec. 823, 827 (BIA 1949). The timely retraction doctrine applies to a

---

[2] The BIA has interpreted INA § 212(a)(6)(C)(ii) not to require an element of intent, i.e., it need not be made 'knowingly.' *Matter of Zhang*, 27 I&N Dec. 569 (BIA 2019). This interpretation is premised upon an incorrect construction which does not deserve deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 468 U.S. 837 (1984).

false claim to U.S. citizenship and stops said claim from rendering an alien inadmissible or deportable. *Valadez-Munoz v. Holder*, 623 F.3d 1304 (9th Cir. 2010); *Martinez v. Lynch*, 606 Fed. Appx. 344 (9th Cir. 2015).

## VIII. FACTUAL ALLEGATIONS

29. Ms. Preston, a citizen of the Philippines, came to the United States with a K-1 non-immigrant visa classification to marry her now-husband, Edward Preston, a U.S. citizen.

30. At all times since her entry to the United States, Ms. Preston has resided with her husband near Fort Greely, Alaska, where he is a civilian employed by the United States Army.

31. On December 31, 2018, Ms. Preston filed with USCIS the forms required for adjustment of status based upon her marriage to Mr. Preston.

32. Sometime before January 24, 2019, Ms. Preston completed an USAJOBS profile on the USAJOBS website.

33. The USAJOBS website profile allows an applicant to state that she is <u>not</u> a citizen or national of the United States yet still permits that same individual to choose the United States as country of citizenship.[3]

34. The USAJOBS site auto-populates job applications only using the "country of citizenship" information in the applicant's profile. The resulting application(s) will automatically show the country of citizenship to be the United

---

[3] Why the USAJOBS software would allow for this is beyond understanding. The inclusion of the United States as a choice for "country of citizenship," after an individual clearly denotes he is not a Citizen or National of the United States, is absurd and may only be described as a programing error.

1 States. This happens even when the applicant answers 'no' to the question of
2 whether she is a citizen or national of the United States in the USAJOBS profile.

3      35. In filing out her USAJOBS profile, Ms. Preston indicated she was
4 neither a citizen nor a national of the United States, but it would appear that on the
5 following line she did not indicate the Philippines as her country of citizenship and
6 chose United States from the list of countries available.

7      36. On January 24, 2019, February 5, 2019, and October 28, 2019, Ms.
8 Preston applied to various positions via the USAJOBS portal. The positions were all
9 at Fort Greely and were designated as open to the public on the USAJOBS site.

10      37. The USAJOBS site defines a job as "open to the public" when U.S.
11 citizens and others, such as U.S. nationals and "persons who owe permanent
12 allegiance to the United States," may also apply for the position.

13      38. Ms. Preston's applications were auto-populated from her USAJOBS
14 profile with Ms. Preston's country of citizenship as 'United States.' Because of this,
15 she and her husband took the job applications to the prospective employer, Ms.
16 Jessica L. Smith, Director, U.S. Army Family and Morale, Welfare, Recreation at
17 Fort Greely, Alaska.

18      39. At all times, Ms. Smith was aware Ms. Preston was a citizen of the
19 Philippines, not the United States, and that she was in the process of obtaining her
20 work permit from USCIS. On February 5, 2019, Ms. Smith, knowing Ms. Preston
21 would need work authorization to be employed, provided Ms. Preston with a letter
22 requesting that the Agency expedite the issuance of Ms. Preston's work permit.
23

40.     On February 27, 2019, Ms. Preston appeared for an appointment at the USCIS Anchorage Field Office to have her biometrics taken for her pending I-485 and other applications. After that appointment Ms. Preston and her husband presented the request to expedite her work permit at the reception window at the Anchorage Field Office.

41.     At the window, Ms. Preston and her husband were mostly questioned as to how and why she obtained a job offer from the U.S. Army if she was not a U.S. citizen. Contrary to what the Agency decision states, at no time did Ms. Preston or her husband represent that she was a U.S. Citizen or that she had obtained the employment offer by claiming to be one. Furthermore, it is unclear how the February 27, 2019 window inquiry became part of the record in this case. The Agency did not place the Prestons under oath prior to questioning them on February 27, 2019 at the window counter.

42.     On October 29, 2019, the Agency conducted Ms. Preston's adjustment of status interview. At the time, Ms. Preston was six months pregnant, which was clear from her appearance. Ms. Preston felt badgered, interrogated, and subjected to significant abuse by the USCIS officer conducting the interview.

43.     The interviewing officer seemed more intent on having Ms. Preston state that she had worked in the U.S. without authorization or that she had falsely claimed to be a U.S. citizen than eliciting any information to the contrary.

44.     The interrogation of the six-months pregnant Ms. Preston took approximately three hours, from 11 A.M. to 2 P.M. The Agency recorded the interview. At one point during the interview, Ms. Preston had to excuse herself to go

11
Case 3:20-cv-00154-JMK   Document 1   Filed 06/25/20   Page 11 of 15

to the restroom to vomit. Upon her return to the interview, the officer, clearly undeterred her by state, continued the questioning. The video of the interview is, and must be, within the record of proceedings.

45. The Agency did not give a decision on the adjustment of status application the day of the interview. Ms. Preston and her husband returned from Anchorage to Fort Greely.

46. On October 21, 2019, the Agency sent Ms. Preston a "Request for Further Evidence" (RFE). The RFE asked for a series of documents which Ms. Preston produced on a timely basis. These documents included the USAJOBS applications as well as documents showing Ms. Preston answered that she was <u>not</u> a U.S. citizen in the USAJOBS profile.

47. On March 19, 2020, Ms. Preston received a Notice of Intent to Deny (NOID). In her response, she provided a letter from Ms. Smith dated April 17, 2020. The letter declared that the citizenship statement in the job applications was a software error of which Ms. Smith was aware, that she instructed Ms. Preston to proceed with the job applications notwithstanding said error, and that at no time did she consider Ms. Preston to be providing false information regarding her citizenship in order to obtain employment. [4]

48. On April 29, 2020, the Agency denied Ms. Preston's application to adjust status, finding that she was inadmissible under INA § 212(a)(6)(C)(ii) and

---

[4] The Agency's position seems to be that Ms. Smith, knowing Ms. Preston was not a U.S. citizen, knowingly allowed her to present job applications containing "false information" in order to obtain employment.

1  that she would be placed in removal proceedings if she did not leave the United
2  States immediately.

3     49.    In its decision, the Agency stated that Ms. Preston falsely claimed to
4  be a U.S. citizen in order to secure employment. The Agency went on to state that
5  Ms. Preston had presented evidence "indicating that the hiring agency new [sic]
6  that you were submitting false information at the time these applications were
7  submitted. USCIS finds that this claim does not absolve you of the fact that you
8  clearly submitted applications on at least three occasions claiming United States
9  citizenship." *See* Agency Decision at Exhibit A.

### IX. CAUSE OF ACTION – VIOLATION OF THE APA

50. Ms. Preston repeats, realleges, and incorporates the foregoing paragraphs as if fully set forth herein.

51. Ms. Preston has been aggrieved by an agency action covered by the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., in that she was unlawfully denied adjustment of status to that of a permanent resident of the United States.

52. A decision is "arbitrary and capricious if the agency has entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

53. In its decision, the Agency misconstrued the language of INA § 212(a)(6)(C)(ii) by finding that a clerical error, made with no intent to deceive,

triggers a false claim to U.S. citizenship. The proper construction of INA § 212(a)(6)(C)(ii) requires the claim to be "false." Holding out that any claim, including one made in error, triggers INA § 212(a)(6)(C)(ii) inadmissibility renders superfluous the word *false* within the statute and presents significant contradictions with other parts of the INA. The Agency's decision, based upon this erroneous interpretation, is not in accordance with the law.

54. The decision denying Ms. Preston's application shows that the Agency ignored evidence within the record, did not have a rational explanation for the weight given to the evidence it did use, and chose to patently mischaracterize other evidence, in full contradiction of the law and its own regulations. In this, the Agency not only failed to follow its own regulations, but reached an implausible conclusion contrary to the evidence in the record.

55. The Agency failed to consider the doctrine of timely retraction as applied to Ms. Preston. The evidence in the record shows that, even if it were assumed Ms. Preston made a false claim under INA § 212(a)(6)(C)(ii), the doctrine of timely retraction would cure all of its deleterious effects, that is, unless the absurd theory set forth in the Agency's decision, involving an alleged conspiracy by Ms. Preston, her husband, and possibly Ms. Smith at Fort Greely, is given credence.

## X. RELIEF REQUESTED

WHEREFORE Plaintiff requests the following relief:

A. Declare Agency's denial of Ms. Preston's application to be unlawful and in violation of the Administrative Procedure Act;

B. Order the Agency to immediately take any action by which Ms. Preston's application for adjustment of status may be adjudicated;

C. Grant attorneys' fees and costs pursuant 28 U.S.C. §2412, 28 U.S.C. §1920, Fed. R. Civ. P. 54(d) and other authority; and

D. Grant any other relief the Court deems appropriate and just.

RESPECTFULLY SUBMITTED on June 25, 2020.

By: s/ Lara Erin Nations
Lara Erin Nations, Esq.
Nations Law Group
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Telephone: 907-770-0909
Facsimile: 907-770-0902

Attorney for Christine Jean Macario Preston